UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| EDWARD GAETA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:16-CV-58-JEM |
| | ) | |
| MERCER BELANGER, P.C., | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 97], filed by Defendant, and Plaintiff's Motion for Partial Summary Judgment [DE 100], both filed on May 12, 2021, and Plaintiff's Motion for Oral Argument [DE 106], filed on June 21, 2021. Defendant moves for summary judgment in its favor on all of Plaintiff's claims, and Plaintiff moves for summary judgment on a number of his claims.

**I.     Procedural Background**

On November 30, 2015, a foreclosure action was filed to collect on a note secured by a mortgage obtained by Plaintiff. It was dismissed without prejudice on February 22, 2016. A second foreclosure on the mortgage and note was filed on April 8, 2016. On July 12, 2016, Plaintiff filed a Complaint in state court claiming that Defendant violated the Fair Debt Collections Practice Act, 15. U.S.C. § 1692 *et seq*. (FDCPA), in a letter it sent to Plaintiff and through the subsequent complaint for foreclosure, and it was removed to this Court on July 29, 2016. The instant case was stayed for about two years while the foreclosure action was pending before the Indiana Court of Appeals, and was returned to the active docket on March 25, 2021.

The parties filed their motions for summary judgment on May 12, 2021. Defendant filed a response to Plaintiff's motion on June 9, 2021, Plaintiff filed a response to Defendant's motion on June 14, 2021, and both parties filed replies on June 21, 2021.

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.   Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50. On cross motions for summary judgment, a court construes, "all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F3.d 615, 621 (7th Cir. 2008). The Court looks to the burden of proof each party would bear on an issue at trial. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

### III. Relevant Facts

Defendant law firm represented Huntington National Bank in state court foreclosure actions against Plaintiff for default on a note secured by a mortgage. The initial foreclosure action was filed on November 15, 2015, and dismissed without prejudice on February 22, 2016. Prior to the dismissal, Defendant asked the attorney representing Plaintiff in the foreclosure if he would accept service in the event of a new foreclosure action being filed, and the attorney refused. On approximately March 22, 2016, Defendant sent a dunning letter to Gaeta conveying information regarding the debt.

On April 8, 2016, Defendant filed a second foreclosure on the mortgage and note. Plaintiff disputed the debt in a writing mailed to Defendant on April 18, 2016. Defendant sent documents verifying the debt to Plaintiff on approximately May 25, 2016.

After the trial court granted the foreclosure on the mortgage and note, Plaintiff appealed. On June 24, 2019, the Indiana Court of Appeals ruled that execution for foreclosure on the mortgage was improper due to non-compliance with certain regulations but affirmed the money judgment against Plaintiff. At that time Defendant began proceedings to collect on the money judgment on behalf of Huntington, and Plaintiff again appealed. On February 23, 2021, the Indiana Court of Appeals affirmed the decision that Huntington was entitled to the entirety of the money judgment.

## IV. Analysis

Plaintiff alleges that Defendant has violated a number of provisions of FDCPA. He alleges that Defendant violated § 1692f(1) and § 1692e by attempting to collect an amount not expressly authorized by the agreement creating the debt or falsely representing the amount, that the dunning letter violated § 1692e because it was a direct communication to Plaintiff when Defendant knew he was represented to an attorney, that it included false and misleading language, and that it did not include language about the dispute process as required by § 1692g.

Defendant moves for summary judgment on all counts of the Complaint. Plaintiff moves for summary judgment on the claims that Defendant communicated with Plaintiff after Plaintiff was represented by counsel and that the dunning letter violated § 1692g, or, in the alternative, included false and misleading language in violation of § 1692e.

### A. Dunning Letter Language

Plaintiff argues that the dunning letter failed to include the required statement regarding notice of how to dispute debt, or, alternatively, that the language in the letter is false and misleading.

4

He asserts that he disputed the debt in writing within 30 days of receiving the letter, but that Defendant filed a second lawsuit within the dispute period. Defendant argues that the dunning letter provided appropriate notice and it ceased collection attempts until the debt was verified, as required. Defendant does not dispute that it filed the foreclosure action within 30 days of mailing the Dunning letter, but argues that it filed the complaint before Plaintiff disputed the debt and ceased its efforts at collection until it mailed verification to the debtor.

> The letter stated, in relevant part:
>
> Federal law gives you thirty (30) days after you receive this letter to dispute the validity of this debt or any part of it. If you don't dispute the debt within that period, I'll assume that it's valid. If you do dispute it - - by notifying me to that effect - - I will, as required by law, obtain and mail to you proof of the debt . . . If you request proof of the debt or the name and address of the original creditor within the thirty (30) day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

The FDCPA requires that a dunning letter include "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(4). Plaintiff argues that the letter does not comply with this section of the statute because it does not state that the consumer must notify the debt collector in writing to obtain verification of the debt. "[A] debt collector's failure to include the 'in writing' requirement violates subsections (a)(4) and (5) of Section 1692g." *Bicking v. L. Offs. of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844–45 (E.D. Va. 2011) (listing cases that have so held). However, Plaintiff did dispute the debt in writing, and has not alleged specific harm from the omission. Without any injury in fact, Plaintiff does not have standing to sue for this violation. *Casillas v. Madison Ave.*

*Assocs., Inc.*, 926 F.3d 329, 331-32, 339 (7th Cir. 2019) (holding that the plaintiff had no standing to bring a claim for violation of 15 U.S.C. § 1692g because "the only harm that [the plaintiff] claimed to have suffered, however, was the receipt of an incomplete letter—and that is insufficient to establish federal jurisdiction" since "a bare procedural violation of the Fair Debt Collection Practices Act . . . is insufficient for purposes of Article III") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1549 (2016)); *see also Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021) ("We do not hold that someone asserting a violation of § 1692g(a)(3) cannot establish injury; we hold only that Smith did not allege injury, because she did not try to show what good a dispute would have done her."); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) ("[A] plaintiff must do more than allege an FDCPA violation to establish standing; she must also show personal harm. Which brings us to the key question in this case: Did Bazile suffer—or has she faced a real risk of suffering—a concrete injury from the collection letter's lack of information . . .?").

Because the question of standing was raised for the first time in Defendant's reply brief and Plaintiff has not had an opportunity to address it, the Court will take under advisement this issue for the time being and allow the parties to address it at a hearing.

Plaintiff also argues that Defendant impermissibly failed to cease its collection efforts during the thirty-day dispute period and instead filed a foreclosure suit on April 6, 2016. The letter stated that the debt collector was required "to suspend [its] efforts (through litigation or otherwise) to collect the debt until [the debtor] mail[s] the requested information to [the debtor]." Plaintiff asserts that this was a false and misleading statement. Defendant argues that its filing of the foreclosure suit was allowed by statute and not inconsistent with the disclosure of a right to dispute the debt. Indeed,

creditors have "the right . . . to initiate suit during the validation period." *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012); *see also Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 416 (7th Cir. 2005) ("This validation period, however, is not a grace period: a debt collector is perfectly free to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period. Thus, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect.") (quotation omitted); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor.").

Defendant points out that its foreclosure complaint was filed before Plaintiff disputed the debt and that it did cease its efforts at collection between the time that Plaintiff disputed the debt and it mailed the verification. Plaintiff asserts that the because the letter did not indicate that Defendant might sue within the thirty-day period, it was misleading, in violation of § 1692e. Plaintiff argues that the filing of the second foreclosure lawsuit against him during the thirty-day period led him to believe he was not entitled to dispute the collection. Even assuming that Plaintiff suffered an injury and has standing to dispute this provision despite the fact that he disputed the debt in writing, the language did not violate the FDCPA in this respect. *See Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636–37 (7th Cir. 2012) (noting that if dunning letter had "go[ne] so far as to mention that [the creditor] had the right, as do all creditors, to initiate suit during the validation period," the information "would not have risen to a violation of Section 1692g(b)").

B. <u>Misleading Statements</u>

Plaintiff alleges that Defendant falsely represented the legal status of debt related to the foreclosure. Defendant moves for summary judgment on this claim, arguing that the dunning letter provided the principal balance and sums recoverable under the terms of the note and mortgage but did not mention any possible foreclosure or security interest of any kind. Plaintiff asserts that the first foreclosure action was dismissed because Huntington did not perform required procedures, and argues that because the mortgage was unenforceable Defendant impermissibly threatened "to take any action that cannot legally be taken or that is not intended to be taken" 15 U.S.C. § 1692e(5) and used "false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

Defendant argues that the language in the letter did not *threaten* to take any particular action with respect to the debt, although it referred generally to the possibility of litigation or other methods of debt collection. *St. John v. Cach, LLC*, 822 F.3d 388, 390–91 (7th Cir. 2016) ("a threat, in the broadest sense, involves a declaration of an intention to take some action"). Even if the language could be construed as a threat to foreclose, Defendant argues that there was no reason for it to believe it could not foreclose on the mortgage at the time it filed the second foreclosure suit. It argues that the unenforceability of the mortgage at issue was not established until the Indiana Court of Appeals issued its ruling to that effect on June 24, 2019, and notes that the dunning letter was sent on March 22, 2016, and the foreclosure action filed on April 6, 2016, more than three years earlier.

It appears that Plaintiff is arguing that because the first foreclosure action was dismissed, Defendant should not have been permitted to file a second action or should have known that the outcome of the second action would be in Plaintiff's favor. However, the first action was dismissed without prejudice. It is not self-evident that a second suit was impermissible: the first suit was

dismissed without prejudice, and, indeed, the trial court in the second case initially found that the conditions precedent to foreclosure had been met. Although that decision was eventually reversed on appeal, the fact that there was ongoing litigation and dispute regarding whether the conditions precedent to foreclosure were satisfied, the Court concludes that Defendant cannot be held to have known at the time it sent the dunning letter and filed the second foreclosure action that foreclosure was unavailable.

Even assuming that Plaintiff has claimed injury sufficient to maintain standing, not only does the letter not explicitly threaten foreclosure on the property, but at the time the letter was sent, Defendant did not know that it was not entitled to foreclose on the property. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims that it falsely represented its entitlement to collect on the debt at the time the letter was sent and the foreclosure action initiated.

      C.      <u>Contact Despite Representation</u>

Both parties moves for summary judgment on Plaintiff's claim that Defendant impermissibly communicated directly with Plaintiff despite knowing that Plaintiff was represented by an attorney. § 1692c(a)(2) provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). Plaintiff asserts that Defendant sent the dunning letter directly to Plaintiff despite knowing that he was represented by counsel in the first lawsuit, and there was no withdrawal of counsel or any indication that Plaintiff was no longer represented, so there is a genuine dispute of fact as to whether Defendant knew that Plaintiff was represented by counsel with respect to the debt. Defendant argues that the attorney who represented Plaintiff through the first foreclosure informed Defendant that he would not accept service for

9

subsequent foreclosure actions, and Defendant understood that the attorney's representation terminated at the conclusion of that action. Defendant asserts it had no way of knowing that Plaintiff was represented in the second foreclosure action when it sent the letter.

Plaintiff fails to point to any injury he suffered as a result of receiving the dunning letter while represented by an attorney, and it seems unlikely that he has standing to challenge this claim. *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) ("[The plaintiff] alleged in her complaint [for violations of § 1692c] that Global Trust's dunning letter caused stress and confusion . . .[She] failed to show that receiving Global Trust's dunning letter led her to change her course of action or put her in harm's way. Instead, she merely pointed to a statutory violation, which is not enough to establish standing under Article III"). However, neither party has addressed the issue of Plaintiff's standing to challenge the communication, so this portion of the motion is taken under advisement to be addressed at a hearing.

## V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS in part** the Motion for Summary Judgment [DE 97] on Plaintiff's claims that Defendant violated § 1692f(1) and § 1692e by attempting to collect an amount not expressly authorized by the agreement creating the debt and that the letter included false and misleading language, and **TAKES UNDER ADVISEMENT** the motion with respect to the other claims. The Court **TAKES UNDER ADVISEMENT** Plaintiff's Motion for Partial Summary Judgment [DE 100], **GRANTS in part** Plaintiff's Motion for Oral Argument [DE 106], and **SETS** this matter for a hearing on the issue of standing with respect to the claims that the dunning letter violated § 1692e and that did not include language required by §

1692g for **August 16, 2021, at 10:00 a.m.** (Central Time) as part of the final pretrial conference.

Parties are instructed to dial 877-873-8017 and enter access code 5155509# when prompted.

    SO ORDERED this 11th day of August, 2021.

                                              s/ John E. Martin
                                              MAGISTRATE JUDGE JOHN E. MARTIN
                                              UNITED STATES DISTRICT COURT

cc:    All counsel of record